United States District Court
Southern District of Texas

**ENTERED**

April 08, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EBONY MITCHELL, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-23-2049 |
| | § | |
| PRAETORIAN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM AND OPINION**

Ebony Mitchell alleges that her homeowner's insurance carrier, Praetorian Insurance Company, underpaid her claim for windstorm damages to her home. Praetorian moves for summary judgment on several grounds, including that the only evidence Mitchell relies on to prove that Praetorian underpaid her claim is a repair estimate prepared by an unidentified individual. Praetorian also moves to exclude the testimony of Mitchell's expert witnesses on the ground that she did not serve expert designations in compliance with Federal Rule of Civil Procedure 26(a)(2). Summary judgment is granted because Mitchell has produced no competent summary judgment evidence raising a genuine factual dispute material to determining whether Praetorian properly paid her claim. The motion to exclude is denied as moot.

I.      **Background**

Mitchell purchased homeowner's insurance from Praetorian with an effective term from June 2020 to June 2021. (Docket Entry No. 35-1 at 5). On September 24, 2020, Mitchell filed a claim with Praetorian for damage she claimed her home sustained from a windstorm the previous day. (*Id.* at 74).

On September 30, 2020, Praetorian assigned an independent adjuster, Matt Dillon, to inspect Mitchell's home.  (*Id.* at 75).  Mr. Dillon observed water damage in two places: (1) the ceiling above the bathroom on the second story; and (2) the ceiling above the kitchen and living room on the first story.  (*Id.* at 76).  Mr. Dillon concluded that the damage to the second story ceiling was "from a roof leak on top of the bathroom ceiling" caused by "[w]ind driven rain."  (*Id.* at 75–76).  He concluded that the damage to the first story ceiling was "from excess water escaping likely from the bathtub[.]"  (*Id.* at 76).  Dillon observed "no damage . . . to the roof covering."  (*Id.* at 76).  Dillon submitted a replacement cost value repair estimate of $872.39 for the bathroom ceiling.  (*Id.* at 90).

On November 10, 2020, Praetorian, acting through QBE Americas, Inc., denied Mitchell's claim with the following letter:

> Dear EBONY MITCHELL,
>
> We are writing on behalf of Praetorian Insurance Company, a member company of QBE North America, regarding your claim filed on September 24, 2020. Your Homeowners carries a deductible in the amount of $2,260.00.
>
> This letter will confirm the results of our inspection which took place on 09/30/2020 at 3834 Mistissin Lane, Houston, TX 77053.
>
> The inspection revealed wind driven rain caused damage to ceiling in three rooms and wall in one room. . [*sic*]
>
> Based on our inspection, the total amount of damage was $872.39. This amount is below your $2,260.00 deductible. Therefore, your claim will be closed without payment.
>
> Please contact the undersigned if there are any questions or additional information you wish for us to consider.

(*Id.* at 87).

On November 4, 2020, Praetorian sent a second independent adjuster, James Rupert, to inspect Mitchell's home.  (*Id.* at 88).  Mr. Rupert noted that Mitchell had begun repairs on the

home, including tarping the roof, "mitigation[,] remov[ing] drywall from the Bathroom and Living room, [and] pull[ing] up the vinyl flooring . . . as well as the carpet by the door of the Bathroom." (*Id.*).  Mr. Rupert also observed "damages to the home that were consistent with hail" and noted that "[w]eather reports verify . . . that there was hail in the area" on the date of loss.  (*Id.* at 89). Rupert noted the roof damage: "one wind damaged shingle on the Right slope and a tarp nailed to the rear slope the way the tarp is fastened damaged the slope shingles failed the brittle test and a full replacement is recommended."  (*Id.*).  He also noted that Mitchell had represented "that some clothes were wet from the leak." (*Id.* at 90).  Mr. Rupert submitted an estimate of repairs, including Mr. Dillon's prior estimated repairs, totaling $8,567.83.  (*Id.* at 103).

On December 16, 2020, Praetorian issued Mitchell a $6,307.83 check, with a letter explaining that it was the replacement cost value for the covered damage to her home, less depreciation and the $2,260 deductible.  (*Id.* at 106–07).

Mitchell hired R&L Building Group, Inc. to perform repairs on her home.  (*Id.* at 108).  On January 6, 2021, R&L sent QBE a repair estimate, explaining that "[w]e would like to schedule Mrs. Mitchell for repairs as soon as possible . . . but we would like to finalize an approved estimate with you prior to beginning the work."  (*Id.*).  QBE forwarded the R&L estimate to Alacrity Solutions to attempt to reach an agreement with R&L on the scope and extent of repairs.  (*Id.* at 193).  Alacrity and R&L agreed on $22,699.51 in replacement cost value.  (*Id.*).  Alacrity was "unable to determine [from the R&L estimate] what repairs [we]re associated with the roof and what repairs [we]re associated with the bathroom," so it "allowed for all repairs."  (*Id.*).

On January 13, 2021, Susan Rogers of QBE asked Mitchell to complete a "property loss worksheet" for any unsalvageable personal property and to submit "proof of ownership"

documents, including "any receipts, invoices, bills, owner's manuals, warranty cards, pictures, cancelled checks or any other documentation you may have for the claimed items." (*Id.* at 249).

On February 2, 2021, Praetorian sent Mitchell a revised estimate and told her that she would be receiving an additional payment in the amount of $10,716.15. (*Id.* at 226, 247).

In April 2021, Mitchell sent QBE a "FEMA" estimate. (*Id.* at 252–70). On May 11, 2021, QBE sent Mitchell a revised estimate in the amount of $27,239.61 in actual cash value. QBE renewed its request for Mitchell to fill out the property loss worksheet for unsalvageable personal property. (*Id.* at 298). Praetorian sent Mitchell a check for $4,540.10 "for the actual cash value of the repairs to your property," less amounts already paid and less the policy deductible. (*Id.* at 320–21).

In May 2021, Mitchell submitted a request for additional living expenses to pay for a hotel for herself and her family and for boarding for her dogs. (*Id.* at 322–23). Praetorian paid for Mitchell and her family to stay at a hotel and to have her dogs boarded for 30 days while it investigated Mitchell's claimed losses for mold in her home. (*Id.* at 324–25). Once Praetorian determined that the mold was not a covered loss under the policy terms, it ceased paying for Mitchell's hotel and boarding expenses. (*Id.*). Mitchell contested the decision in an email to QBE, stating: "[T]here is no progress on my home! How can we be forced to leave a safe and mold free atmosphere to return to a home that has mold?" (*Id.* at 326). In a follow-up email, Mitchell stated that the only repairs that had been completed were "[r]oof repair" and "[c]aulking of 2 holes." (*Id.* at 327). She stated that "[t]he money provided by QBE has not been sufficient to cover the damages therefore work which was agreed by both QBE and the original contractor that needed to be complete, has not been completed." (*Id.*). In response, QBE informed Mitchell that her claimed

mold damages were not covered, but that a re-inspection would be done "to address any damages from the roof leak that may have been overlooked." (*Id.* at 329).

On June 25, 2021, an independent adjuster named Robert Daaboul inspected Mitchell's home to "determine if there was any missed storm related damaged [*sic*] to the property." (*Id.* at 331–32). Mr. Daaboul observed "a hole in the ceiling that had a visible pipe repair … [t]h[at] was not storm related"; mold growth on cabinets "due to humidity from A/C being out for months"; removed carpet on the stairwell; "[n]o visible signs of storm related damage to the stairwell walls or ceiling"; the "[u]pstairs bathroom had the floor removed and had visible rotted decking next to the bathtub . . . caused by excess water being spilled over from [the] shower." (*Id.* at 332).

On June 25, 2021, QBE sent Mitchell a letter explaining the denial of coverage for her mold claim. (*Id.* at 334). The letter explained:

> During our investigation on June 25, 2021, we found that there is no electricity in your home and the only mold that was present was on the bottom part of the cabinets in the kitchen and not part of this roof leak claim. There is also damage to the bathroom floor, where the floors were pulled up due to water dripping when residents got out of the tub and water seeped under the flooring. No mold damage was observed elsewhere in the home.
>
> Your policy specifically excludes fungi, however the other dwelling damages were covered.

(*Id.*). The letter concluded: "Our investigation found the mold is not related to the roof leak claim. Unfortunately, we are unable to offer coverage for the mold related damages. . . . Your checks total the amount of $21,564.08 for the replacement cost estimate of the repairs to your property, less your policy deductible." (*Id.* at 339).

Both parties invoked their right to appraisal under the policy. The appraisal process stalled after Mitchell: (1) refused to agree to any settlement that did not cover "[m]old mitigation[,] gutting of [the] entire home," and HVAC replacement; and (2) replaced her originally appointed appraiser

with a new appraiser who objected to the umpire that had been appointed.  (Docket Entry No. 35-2 at 4–5, 13, 480).

In December 2021, Mitchell sued Praetorian in state court, alleging causes of action for breach of contract; breach of the duty of good faith and fair dealing; violations of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.01 *et seq.*; violations of Chapter 541 of the Texas Insurance Code, § 541.001 *et seq.*; violations of the Texas Prompt Payment of Claims Act, § TEX. BUS. & COM. CODE § 542.051 *et seq.*; common law fraud; and conspiracy.  (Docket Entry No. 1-2).

In June 2023, Praetorian removed to federal court on the basis of diversity jurisdiction after Mitchell amended her complaint, removing a binding stipulation that limited her damages to $75,000.  (Docket Entry No. 35-2 at 252, 709; Docket Entry No. 1).

In July 2023, Mitchell moved to abate the case pending the completion of appraisal. (Docket Entry No. 12).  Praetorian opposed the motion on the ground that Mitchell had waived her right to appraisal because she had refused "to move forward with the validly appointed umpire" after replacing her appraiser.  (Docket Entry No. 17 at 20).  The court agreed that Mitchell had waived her right to appraisal, and orally denied the motion to abate.  (Docket Entry No. 24).

In November 2023, the court dismissed all of Mitchell's claims without prejudice except for her claim for breach of contract and her claim for violation of § 541.060(a)(3) of the Texas Insurance Code.  (Docket Entry No. 26).  Mitchell amended her complaint, (Docket Entry No. 28), and Praetorian again moved to dismiss, (Docket Entry No. 29).

In January 2024, the court found that Mitchell had failed to cure her pleading deficiencies and dismissed, with prejudice, all claims except for breach of contract and the alleged § 541.060(a)(3) violation.  (Docket Entry No. 32).

6

In February 2024, Praetorian moved for summary judgment.  (Docket Entry No. 34).
Mitchell responded, (Docket Entry No. 37), and Praetorian replied.  (Docket Entry No. 39).

In March 2024, Praetorian moved to exclude Mitchell's expert testimony for her failure to
comply with Federal Rule of Civil Procedure 26(a)(2).  (Docket Entry No. 40).  Mitchell
responded, (Docket Entry No. 45), and Praetorian replied, (Docket Entry No. 46).

Based on the record, the briefing, and the applicable law, the motion for summary judgment
is granted.  (Docket Entry No. 34).  The motion to exclude is denied as moot.  (Docket Entry No.
40).  The reasons are set out below.

## II.    The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"
*Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th
Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the
suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021)
(quoting reference omitted).  The moving party "always bears the initial responsibility of
informing the district court of the basis for its motion[] and identifying" the record evidence
"which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp.
v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary
judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the
burden of demonstrating by competent summary judgment proof that there is [a dispute] of
material fact warranting trial.'  *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)

7

(alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'"  *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion."  *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted).  The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted).  Of course, all reasonable inferences are drawn in the nonmovant's favor.  *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).  But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

## III.  Analysis

Mitchell's remaining claims are for breach of contract and violation of § 541.060(a)(3) of the Texas Insurance Code.  Summary judgment is appropriate on both claims.

### A.  The Breach of Contract Claim

An insurance policy is interpreted like any other contract.  *See E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).  To prevail on a breach of contract claim, a plaintiff must prove "(1) the existence of a valid contract, (2) performance or tendered performance

8

by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Mitchell claims that Praetorian breached the homeowner's policy by: (1) paying her less than was necessary to repair her home with materials of like kind and quality; (2) failing to pay her for personal property inside her home that the windstorm had damaged; and (3) failing to pay her for losses caused by mold. For the reasons set out below, each claim fails as a matter of law.

### 1. Repair Costs

Praetorian paid Mitchell $21,564.08 to repair her home. This payment included the estimated cost of a full roof replacement and repairs for Mitchell's ceiling damage. Praetorian argues that this payment was not only sufficient to reimburse Mitchell for her covered losses, but that it went significantly beyond her covered losses. According to Praetorian, the roof replacement was not covered because the roof problems were caused by improper tarping, not by the windstorm. (Docket Entry No. 34 at 21). And Praetorian contends that the first-story ceiling damage was not within policy coverage because it was caused by "bathtub spillover." (*Id.* at 21–22). Praetorian maintains that it "overpaid the [w]ind [c]laim" "in good faith." (*Id.* at 22).

In response, Mitchell relies on an estimate prepared by Quantum Claim Consulting Services in August 2021. The Quantum estimate calculates roof replacement at $16,447.66, fence replacement at $7,086.58, living room and kitchen repairs at $14,608.59, stairway repairs at $1,700.42, loft repairs at $1,997.51, bedroom repairs at $12,006.16, and bathroom repairs at $2,681.28. (Docket Entry No. 37-1 at 3–10). Quantum's total estimate for materials and labor is $67,144.82. (*Id.* at 11–12).

Praetorian argues—in both its motion for summary judgment and motion to exclude Mitchell's experts—that the Quantum estimate is incompetent summary judgment evidence, for two reasons.  First, Praetorian argues that the Quantum estimate cannot be considered because the record does not show who prepared it and that person cannot be cross examined on the estimate.  Second, Quantum argues that Mitchell cannot rely on expert testimony to oppose summary judgment because she did not timely designate her expert witnesses in accordance with Federal Rule of Civil Procedure 26(a)(2).  Because Praetorian's first argument is meritorious, the court need not reach the second argument.

Federal Rule of Civil Procedure 56(e) requires a proper foundation for summary judgment evidence.  *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007).  A document, such as a report or repair estimate, cannot raise a factual dispute that would preclude summary judgment if the record does not sufficiently prove up the document.  An unauthenticated document prepared by an unknown source using unexplained hearsay information is not competent summary judgment evidence.  *See Quibodeaux v. Nautilus Ins. Co.*, 655 Fed. App'x. 984, 987 (5th Cir. 2016) ("Our own unaided review of the record reveals only the unsigned, handwritten list of contents from the daycare center produced during discovery.  Even if Quibodeaux had directed our attention to the list, the document is unauthenticated and thus is improper as summary judgment evidence."); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 (9th Cir. 2002); *Faulks v. Wells Fargo & Co.*, 231 F. Supp. 3d 387, 398 (N.D. Cal. 2017), *aff'd*, 728 Fed. Appx. 781 (9th Cir. 2018).

This requirement is no mere formality, especially when the document contains opinions that may be expressed only by an expert witness, such as a repair estimate.  *Hart v. State Farm Lloyds*, 2024 WL 310539, at *3 (N.D. Tex. Jan. 25, 2024) ("[A]n estimate to repair property damage requires 'specialized knowledge of construction and repair work' and therefore is based

on specialized knowledge within the scope of Rule 702.") (quoting *Pendarvis v. Am. Bankers Ins. Co. of Fla.*, 354 Fed. App'x 866, 868–69 (5th Cir. 2009) (unpublished)).   There is no way to determine whether a document prepared by an unknown author is supported by the "knowledge, skill, experience, training, or education" required of an expert witness.   FED. R. EVID. 702.

The Quantum estimate does not identify its author.   The signature line for "QCC Estimator" is blank.   (Docket Entry No. 37-1 at 12).   The cover page says the "Operator" is "RICK.QCC," but there is no basis in the record to draw any conclusion about who "RICK.QCC" is, or that he prepared or approved the estimate.   (*Id.* at 1).   In light of this glaring evidentiary deficiency, Mitchell could have filed a declaration from the estimate's author attesting that he or she prepared the estimate and that it accurately reflects his or her findings and conclusions.   Mitchell does not explain her choice not to do so.[1]   Instead, she alleges without any record support that the Quantum estimate "was prepared by an independent inspector with building experience, familiarity with product grades/types, and knowledge of repair costs in Plaintiff's area.   Thus, it supplies competent evidence creating genuine fact issues as to the amount Defendant should have paid for like kind and quality repairs under the Policy."   (Docket Entry No. 37 at 13).

Mitchell has not asked for the opportunity to produce evidence of the Quantum estimate's author, methodology, source of information, or other material under Federal Rule of Civil Procedure 56(e)(1).   Mitchell has had ample opportunity to do so.   Finally, the Quantum estimate,

---

[1] Praetorian suggests that "RICK.QCC" is Richard Gadrow, who was listed in Mitchell's expert disclosures before this case was removed to federal court.   (Docket Entry No. 46 at 2–3).   Mitchell amended her disclosures in June 2023, replacing Richard Gadrow with Brandon Gadrow.   (Docket Entry No. 41 at 16).   Praetorian claims that Brandon Gadrow is Richard Gadrow's son, and that Mitchell swapped father for son after the father passed away.   (Docket Entry No. 46 at 2–3).   This might explain why Mitchell's counsel has not produced a declaration from Richard Gadrow, assuming he is the author of the Quantum estimate.   The court makes no findings as to any of this because it is extraneous and there is no evidence in the record about any of it.

even if considered, would not raise a factual dispute material to determining the motion for summary judgment.  The third point requires some explanation.

To successfully oppose Praetorian's motion for summary judgment, Mitchell must not only raise a factual dispute material to determining whether Praetorian paid her enough to cover her losses, she must also raise a factual dispute about whether the losses she claims in excess of Praetorian's payment and the deductible were covered under the policy.  Praetorian does not dispute that Mitchell's second-story ceiling was damaged by a covered cause of loss—windstorm. But Praetorian does dispute that the other damage in the Quantum estimate was covered, and Praetorian has produced competent summary judgment evidence that it was not covered.  The estimates prepared by Mr. Dillon and Mr. Daaboul attribute the first-story ceiling damage to bathtub spillover.  (Docket Entry No. 35-1 at 76, 332).  And there is no dispute that bathtub spillover was not a covered cause of loss under the policy.  As for the roof damage, Mr. Rupert's report attributes that, at least in part, to improper tarping.  (*Id.* at 88).

Mitchell has not pointed to or produced evidence to controvert Praetorian's evidence about the causes of these losses.  The Quantum estimate does not include any opinions about the causes of loss, but only about the cost of repairs.  And Mitchell has not identified any other record evidence showing that the first-story ceiling was damaged by windstorm rather than bathtub spillover, or that the roof was damaged by windstorm rather than improper tarping.

That said, Mr. Rupert's report, when viewed in the light most favorable to Mitchell, can be taken as evidence that the roof was damaged by a combination of improper tarping and windstorm. (*Id.*).  But because there is no basis in the record to separate the damages attributable to each cause, the doctrine of concurrent causation applies to bar Mitchell's recovery.  *See Dillon Gage Incorporated of Dallas v. Certain Underwriters at Lloyds Subscribing to Policy No. EE1701590,*

636 S.W.3d 640, 645 (Tex. 2021) ("Texas concurrent-causation doctrine applies when covered and excluded events combine to cause an insured's loss.  Under that doctrine, if covered and uncovered events are inseparable, then causation is concurrent, the insurance policy's exclusion applies, and the insurer owes no coverage for the loss.").

The question then becomes whether the $21,564.08 that Praetorian paid Mitchell was enough to repair the second-story ceiling, the only damage solely attributable to a covered cause of loss.  It is not clear from the line items in the Quantum estimate which repairs were for the covered damage to the second-story ceiling.  But the covered ceiling damage was above the bathroom, and Quantum's entire repair estimate for the bathroom, including work to the "walls and ceiling," totals $2,681.28.  (Docket Entry No. 37-1 at 10).  For this reason, Mitchell fails to raise a genuine factual dispute material to determining that Praetorian properly paid her for covered losses, even if the court were to consider the Quantum estimate.

### 2.    Personal Property

Mitchell's homeowner's policy did not cover "loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening."  (Docket Entry No. 35-1 at 17).  Praetorian argues that Mitchell has failed to raise a genuine factual dispute material to determining whether her personal property was damaged by rain entering the home through an opening in a roof or wall caused by "the direct force of wind or hail."  (Docket Entry No. 34 at 26).

Mitchell argues, without citations to the record, that: "Plaintiff has testified that openings did exist in her roof's shingles caused by hail, through which rain then entered and damaged personal property items in her home, including clothing in upstairs bedrooms."  (Docket Entry No.

13

37 at 15).  She also relies—again without record citations—on "[p]hotos taken by Plaintiff showing personal belongings damaged by water."  (*Id.*).

Even assuming a lay witness could hypothetically offer competent evidence on the cause of openings in her roof, Mitchell has not done so.  She has not identified record evidence, or competent evidence attached to her summary judgment response, such as deposition testimony, affidavit, or declaration, including her opinion that hail caused openings in her roof, or that her personal property was damaged by rain that entered through those alleged openings.

Summary judgment is appropriate on Mitchell's breach of contract claim for personal property loss.

### 3.    Mold Coverage

Mitchell's homeowner's policy did not insure for loss caused by "[m]old, fungus or wet rot" unless "hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

> (a) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or
>
> (b) A storm drain, or water, steam or sewer pipes, off the "residence premises".

(Docket Entry No. 35-1 at 15–16).

Mitchell's brief in response to the motion for summary judgment addresses mold damage only in its "summary of argument" section:  "[F]act issues exist on the applicability of the mold exclusion that preclude summary judgment for Defendant on that basis.  Plaintiff has evidence showing some mold damage resulted from accidental discharge or overflow of water, falling into the Policy exception."  (Docket Entry No. 37 at 9).  Mitchell does not offer record citations or

argument in support of this bare conclusion.  *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

Summary judgment is appropriate on Mitchell's breach of contract claim for mold damage.

### B.      The § 541.060(a)(3) Claim

Section 541.060(a)(3) makes it an "unfair settlement practice[]" to "fail[] to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim."  Praetorian argues that Mitchell has produced no evidence that Praetorian failed to provide a prompt and reasonable explanation for any denial or compromise settlement of Mitchell's claim. (Docket Entry No. 34 at 28).  Praetorian also argues that Mitchell's § 541.060(a)(3) claim fails as a matter of law under *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489–94 (Tex. 2018), because it is predicated on her unmeritorious breach of contract claim, not on an independent injury.  (*Id.* at 30–31).

The court agrees that summary judgment is appropriate on Mitchell's claim under § 541.060(a)(3).  Each time Praetorian either denied Mitchell's claim or issued a payment, it provided a reasonable explanation for the decision, supported by facts and specific provisions of the policy.  When Praetorian denied Mitchell's claim in November 2020, it explained that Mr. Dillon's estimate showed that repair costs fell below the deductible.  (Docket Entry No. 35-1 at 87).  In December 2020, Praetorian revised its decision and issued a payment to Mitchell based on Mr. Rupert's estimate, with a written explanation.  (*Id.* at 106–07).  Praetorian sent a similar email in February 2021 when it issued an additional payment based on its revised estimate.  (*Id.* at 226). In June 2021, when Praetorian denied Mitchell's claim for mold damage, it provided a letter thoroughly summarizing the factual investigation and policy provisions underlying the decision.

15

(*Id.* at 334–40).   Mitchell has not adequately explained how any of these explanations was unreasonable "in relation to the facts or applicable law."

Mitchell's § 541.060(a)(3) claim fails for the additional reason that she has not identified an independent injury flowing from the alleged statutory violation rather than from the alleged denial of benefits.   *Menchaca* is clear that when a plaintiff's claim for breach of the insurance policy fails, she may prevail on statutory claims only when supported by an "injury independent of the insured's right to recover policy benefits."   *Menchaca*, 545 S.W.3d at 499.

Summary judgment is appropriate on Mitchell's § 541.060(a)(3) claim.

## IV. Conclusion

Praetorian's motion for summary judgment is granted.   (Docket Entry No. 34). Praetorian's motion to exclude is denied as moot.  (Docket Entry No. 40).  A final judgment will follow.

SIGNED on April 8, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge